UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:10-cv-24143 – MORENO/TORRES

RAC Insurance Partners, LLC,      )
Plaintiff                         )
                                  )
v.                                )
                                  )
Clarendon National Insurance Company, )
Defendant.                        )
                                  )
_____)

### DEFENDANT'S STATEMENT OF MATERIAL FACTS IN DISPUTE AND ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Southern District of Florida Local Rule 7.5, Defendant Clarendon National Insurance Company ("Clarendon") hereby submits its Statement of Material Facts in Dispute and Additional Undisputed Material Facts, in opposition to Plaintiff RAC Insurance Partners, LLC's ("RAC's") Motion for Summary Judgment:

### DEFENDANT'S COUNTER-STATEMENT TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The Cuquejo Claim

6.  Olortegui was insured under a policy of automobile liability insurance written by RAC on behalf of Clarendon. (Cuadra Decl., Exh. B, Second WHEREAS Clause); (Sheehan Affid. ¶ 14; Stinson Affid. ¶ 5).[1]

8.  The settlement on the Cuquejo Claim was paid to Cuquejo by Lexington Insurance Company ("Lexington"), RAC's errors and omissions ("E&O") insurer), in the amount of $2 million; Columbia Casualty Company ("CCC"), Clarendon's E&O insurer, in the

---

[1] Copies of the Affidavits of Michael Sheehan ("Sheehan Affid."), Barry Stinson ("Stinson Affid."), Adam Russ ("Russ Affid.") and Lewis N. Jack, Jr. ("Jack Affid.") are filed contemporaneously herewith, with attached exhibits, under a separate notice of filing. The Complaint in this action was filed on November 18, 2010 and is [D.E. 1] on this Court's docket. The Answer in this case was filed on January 13, 2011 and is [D.E.9] on this Court's docket.

amount of $9.2 million; and Clarendon, in the amount of $1.3 million. (Jack Affid., ¶ 7 and Exh. A; Stinson Affid. ¶ 8 ; Sheehan Affid. ¶ 15).

The Clarendon/RAC Settlement Agreement

9.  The Settlement Agreement was entered into by Clarendon, RAC, Lexington, CCC and Illinois Union Insurance Company ("Illinois Union"), Clarendon's excess E&O insurer. (Cuadra Decl., Exh. B, first sentence; Jack Affid. ¶ 7; Stinson Affid. ¶ 8; Sheehan Affid. ¶ 15 .) The Settlement Agreement resolved Clarendon, CCC and Illinois Union's claims against RAC arising from or relating to RAC's administration of the Cuquejo Claim on behalf of Clarendon pursuant to the Claims Administration Agreement entered into by RAC and Clarendon on April 1, 2003 (the "Claims Administration Agreement"). (Cuadra Decl, Exh. B, Second and Third WHEREAS Clauses; Jack Affid., ¶¶ 9-10; Stinson Affid. ¶¶ 10-11; Sheehan Affid. ¶ 15). The Settlement Agreement had no effect whatsoever on the Agency Agreement. (Id.)

10.  Paragraph 13 of the Settlement Agreement states that "any action to enforce this Agreement shall be brought in the State of Florida." Plaintiff's paraphrase is incorrect and misleading. (Cuadra Decl., Exh. B at ¶ 13).

11.  The Fourth WHEREAS clause of the Settlement Agreement ends with the words "as a result of the circumstances and events described above." Plaintiff's insertion of its own additional bracketed language is inaccurate and misleading. (Cuadra Decl., Exh. B, Fourth WHEREAS clause). The Fourth WHEREAS Clause contains no bold-face, italicized or underlined text; accordingly, the words "as a result of the circumstances" have equal weight with the words typographically emphasized by Plaintiff.

13.  Plaintiff's inclusion of its own additional bracketed language ("[Cuquejo Claim]"), which does not appear in paragraph 2 of the Settlement Agreement, is inaccurate and misleading. (Cuadra Decl., Exh. B, ¶ 2). Paragraph 2 contains no bold-face, italicized or underlined text; accordingly the words "which have been, could have been, or might have been asserted as a result of the events related to or concerning the automobile accident that occurred on November 14, 2004" and "any and all claims specifically related to allegations of improper claim handling, professional liability or bad faith on the part of RAC Insurance Partners, LLC" have equal weight with the text typographically emphasized by Plaintiff. (Id.)

14. Paragraph 3 of the Settlement Agreement concludes with the words "for the matters released hereinabove." Plaintiff's inclusion of its own additional bracketed language is inaccurate and misleading. (Cuadra Decl., Exh. B, ¶ 3). Paragraph 3 contains no bold-face, italicized or underlined text; hence the words "the potential bad faith claim by Ciro Olortegui against Clarendon and its insurers" in the first sentence, and the words "for the matters released hereinabove" have equal weight with the text typographically emphasized by Plaintiff.

16. Paragraph 11 contains no bold-face, italicized or underlined text; accordingly, the words "with respect to the subject matter hereof" and "with respect thereto" contained in the first sentence of Paragraph 11 of the Settlement Agreement have equal weight with the words typographically emphasized by Plaintiff. (Cuadra Decl., Exh. B, ¶ 11).

18. Plaintiff's final sentence is incorrect. Clarendon's claim with respect to the Settlement Agreement, which it set forth in Paragraph 24 of its Answer, is that the Settlement Agreement addresses any and all claims Clarendon had or might have had arising from or related to RAC's breach of the Claims Administration Agreement or negligence with respect to its performance of its functions as Clarendon's claims administrator, including negligence (E&O) claims, breach of contract claims, claims for indemnification or subrogation. (Answer ¶¶ 16, 24; Cuadra Decl., Exh. B, Second and Third WHEREAS Clauses; Stinson Affid. ¶¶ 10-11). The Settlement Agreement and Clarendon's release thereunder had absolutely no effect on the Agency Agreement, because the Cuquejo accident and lawsuit did not give rise to any claim on the part of Clarendon or its E&O insurers under the Agency Agreement; accordingly, there was no claim to settle or release. (Cuadra Decl., Exh. B, First through Fourth WHEREAS Clauses, Sheehan Affid. ¶¶ 18-31; Stinson Affid. ¶¶ 10-18 ; Jack Affid. ¶¶ 9-17).

Commission Adjustments under the Agency Agreement

21. Plaintiff's statement is incorrect: RAC's commission is determined by a sliding scale of the ratio between losses and expenses on the one hand and premium on the other for the period in question. (Sheehan Affid. ¶¶ 9-11; Alvarez Decl., Exh. D, pp. 4-11).

22. Plaintiff's final sentence is incorrect: If the amount of commission previously paid to RAC is greater than the amount of adjusted commission, then RAC owes Clarendon the difference. Cuadra Decl., Exh. A, Section 3.1(d). Conversely, if the amount of commission previously paid to RAC is less than the adjusted commission, Clarendon owes RAC the

difference. Id. All else being equal, if the ratio of losses and expenses incurred to premium collected is higher, then the adjusted commission due to RAC will be lower than it otherwise would have been. (Cuadra Decl., Exh. A, Schedule C; Sheehan Affid., ¶¶ 9-11).

Clarendon's Claim for Adjusted Commission Overpayments

23. Clarendon did not calculate RAC's adjusted commission on April 30, 2009, and could not possibly have done so since the calculation is made as of April 30, 2009 and the relevant loss/expense and premium data must be properly collected, recorded and transmitted before any such calculation can be made. Cuadra Decl., Exh. A, Section 3.1(d). The calculation was completed by Clarendon approximately 60 days after that date. (Alvarez Decl., Exh. A (Sheehan July 6, 2009 e-mail)).

26. The amount of adjusted commission properly attributable to the Cuquejo Claim, and the methodology employed by RAC to calculate that amount, are material and central factual questions in dispute, which can only be resolved with reference to the Agency Agreement. (Sheehan Affid., ¶¶ 17-24 ). RAC itself has variously claimed that the amount attributable to the Cuquejo Claim was $540,000.00 or $514,000.00. (Russ Affid., Exh. D (Letter from RAC counsel Kara Headley to Hon. Richard M. Berman, dated March 1, 2011, p. 2)).

28. The Settlement Agreement has no bearing or effect upon the Excess Commission due Clarendon from RAC, Alvarez and Cuadra under the Agency Agreement; accordingly, the New York Action was not brought by Clarendon "despite" the provisions of the Settlement Agreement. (Cuadra Decl., Exhs. A (Schedule C, Article 3) and B (First, Second, Third and Fourth WHEREAS clauses); Sheehan Affid. ¶¶ 17-24; Russ Affid. ¶¶ 11-13; Jack Affid. ¶¶ 9-17; Stinson Affid. ¶¶ 10-16).

29. The deterioration in the overall program loss ratios was, and continue to be, significant. (Sheehan Affid. ¶ 11).

34. There was no need for Clarendon to reserve its right to seek excess commission under the Agency Agreement, since the Settlement Agreement by its terms bears no relationship to the Agency Agreement. (Cuadra Decl. Exh. B (First through Fourth Whereas clauses; Answer ¶ 24; Sheehan Affid. ¶¶ 18–19, 29 and 31; Jack Affid. ¶¶ 9-17; Stinson Affid. ¶¶ 10-16). Clarendon has never agreed to any amendment of the Agency Agreement or its right to excess commission thereunder as a result of or with respect to the Cuquejo Claim. (Id). RAC never

sought release of its obligations under the Agency Agreement in the negotiation of the Settlement Agreement, nor did it offer or provide any consideration to Clarendon for such a release. (Jack Affid. ¶¶ 8-9 and 11-13; Stinson Affid. ¶¶ 12-14).

36. Clarendon vigorously denies that RAC, Cuadra or Alvarez has been damaged as a result of Clarendon's assertion of its rights under the Agency Agreement; rather RAC, Alvarez and Cuadra have been unjustly enriched at Clarendon's expense and have thereby caused Clarendon substantial injury. (Sheehan Affid. ¶ 11, Answer).

ADDITIONAL UNDISPUTED MATERIAL FACTS

The Claims Administration Agreement

1. RAC Insurance Partners, LLC ("RAC") and Clarendon National Insurance Company ("Clarendon") entered into a Claims Administration Agreement, effective April 1, 2003, pursuant to which RAC administers and adjusts all claims arising under the policies issued pursuant to the Agency Agreement. (Answer, Exh. B, § 2.1; Sheehan Affid. ¶ 4 ).

2. The Declarations Page of the Claims Administration Agreement separately identifies RAC as "Administrator" under the Claims Administration Agreement and as the "General Agent" under the Agency Agreement (Answer, Exh. B, Declarations Page, Item A). Clarendon is identified as the "Company" to whom RAC owes its duties as Administrator. Id.

3. The first sentence of the Declarations Page states: "These Declarations, together with the Agreement and all schedules, exhibits and amendments thereto constitute the claims administration agreement between the Company and the Administrator." (Answer, Exh. B, Declarations Page, first sentence).

4. The first sentence of Item B of the Declarations Page of the Claims Administration Agreement states: "The Company and the General Agent have entered into a general agency agreement ("General Agency Agreement") dated April 1, 2003." (Answer, Exh. B, Declarations Page, Item B).

5. The Cuquejo Claim was one of the claims that RAC, as Administrator under the Claims Administration Agreement, was obligated to administer and adjust on behalf of Clarendon. (Answer, ¶ 16; Cuadra Decl., Exh. B, Second WHEREAS Clause; Sheehan Affid. ¶ 14).

6. Both the Claims Administration Agreement and Addendum No. 1 to the Claims Administration Agreement were signed on behalf of RAC by Enrique Cuadra. (Answer, Exh. B, p. 23, Addendum No. 1, pp. 2-3).

7. For its services as Administrator under the Claims Administration Agreement, RAC earned the fees specified in Article 3 and Exhibit A of the Claims Administration Agreement. (Answer, Exh. B, Art. 3 and Exhibit A; Sheehan Affid. ¶ 12).

8. The fees earned by RAC for its services under the Claims Administration are separate from and in addition to the commission RAC earned as General Agent under the Agency Agreement. (Sheehan Affid. ¶ 12).

The General Agency Agreement

9. The Agency Agreement between Clarendon and RAC as policy administrator contains a mandatory, exclusive forum selection clause which provides that any dispute arising out of or relating to the Agency Agreement shall be brought in the state or federal courts sitting in New York County. (Cuadra Decl., Exh. A, § 9.6).

10. Section 9.11 of the Agency Agreement provides as follows:

Entire Agreement.   This Agreement, and the Schedules attached, sets forth the entire understanding of the parties with regard to its subject matter, and supersedes and merges all prior discussions, agreement, promises, representations, warranties and arrangements between them with regard to such subject matter. Neither party shall be bound by any agreement, representation or warranty regarding such subject matter other than as expressly set forth in this Agreement or in a subsequent writing signed by the party to be bound thereby.  This Agreement may not be modified or supplemented, nor may any provision be waived, except by a writing signed by the party to be bound thereby.
(Cuadra Decl., Exh. A, § 9.11).

11. The Agency Agreement was modified by five subsequent writings signed by the parties, as set forth in Addenda 1-5 of the Agency Agreement. (Cuadra Decl., Exh. A, court-numbered pp. 49-63 of 84).

12. Addendum 5 of the Agency Agreement, effective as of March 1, 2008, was executed by RAC and Clarendon on March 13, 2008 and March 4, 2008, respectively, or approximately two weeks and one week, respectively, after the execution of the Settlement Agreement. (Cuadra Decl., Exh. A, court-numbered pages 62-63 of 84; Cuadra Decl., Exh. B, pp. 6 and 7).

13. Recital B of Addendum No. 5 of the Agency Agreement states: "The parties wish to amend the Agreement to reflect revised commission and commission adjustment terms and to otherwise ratify their obligations under the Agreement." (Cuadra Decl., Exh. A, court-numbered page 62).

14. Addendum No. 5 makes no mention of or reference to the Cuquejo Claim or Settlement Agreement and makes no amendment to either the Agency Agreement, or to the calculation of commission or adjusted commission thereunder, that relates in any way to the Cuquejo Claim. Nor do any of the other four Addenda to the Agency Agreement refer or relate in any way to the Cuquejo Claim or to the Settlement Agreement. (Cuadra Decl., Exh. A, court-numbered pp. 49-63 of 84).

15. The General Agency Agreement and all of its Addenda (Nos. 1-5) were executed on behalf of RAC by Luis Alvarez. (Cuadra Decl., Exh. A, court-numbered pp. 50, 54, 56, 60-61, and 63 of 84).

Clarendon's Claim for Adjusted Commission Overpayments

16. The adjusted commission calculation supporting Clarendon's claim for Excess Commission as of April 30th 2009, and RAC's calculation of adjusted commission as of such date, are based upon loss, expense and premium amounts incurred or collected as of April 30, 2009; accordingly, Clarendon's claim for Excess Commission, by definition, did not and could not accrue prior to April 30th of such year. (Answer, ¶ 13; Alvarez Decl., Exhs. A –D; Sheehan Affid. ¶ 17).

The Settlement Agreement

17. The Second and Third WHEREAS clauses of the Settlement Agreement provide as follows:

> WHEREAS, Ciro Olortegui was insured under a policy of automobile liability insurance with Clarendon, which had an agreement with RAC whereby RAC would adjust claims and suits against Clarendon insureds, such as the lawsuit filed by Marlene Cuquejo against Ciro Olortegui; and
>
> WHEREAS, the events related to the lawsuit filed by Marlene Cuquejo against Ciro Olortegui gave rise to a purported bad faith claim by Olortegui against Clarendon which, in turn, gave rise to a purported errors and omissions claim by Clarendon, Columbia and Illinois Union against RAC and its insurer, Lexington;

(Cuadra Decl., Exh. B, first page).

18. Although the Settlement Agreement expressly mentions and references the Claims Administration Agreement, it contains no mention of or reference to the Agency Agreement or any claim or right of Clarendon arising thereunder. (Cuadra Decl., Exh. B, pp. 1-4).

19. On January 11, 2008, Scott Newman, counsel to RAC's E&O insurer, Lexington, wrote an email to counsel to the other parties to the Settlement Agreement, stating in relevant part as follows:

> On behalf of Lexington, please allow this to confirm the resolution of the potential E&O claims by Clarendon, Columbia Casualty and Illinois Union against Lexington's insured, RAC Partners, LLC. In exchange for Lexington's agreement to pay its policy limits of $2 million, Clarendon, Columbia Casualty and Illinois Union will execute a full release of all claims against RAC arising out of and/or related to the underlying Cuquejo v Olortegui matter.

(Jack Affid. ¶ 16 , Exh. B).

20. Forty-five minutes after Mr. Newman's e-mail (see ¶ 19, above) was sent, Clarendon's counsel, Lew Jack, replied: "Thanks. No questions here …. The release by Clarendon in favor of RAC should be limited to this specific Cuquello [sic] case. Lew." (Jack Affid. ¶ 17, Exh.C ).

21. RAC contributed none of its own funds to the settlement of the Cuquejo Claim. (Jack Affid. ¶ 8; Stinson Affid. ¶ 9).

MATERIAL FACTS AS TO WHICH THERE EXISTS
A GENUINE ISSUE TO BE TRIED

The Settlement Agreement

1. None of the parties to the Settlement Agreement, including RAC and Lexington, ever intended that the Settlement Agreement would relate to or release RAC from its purely contractual obligation to pay Excess Commission in accordance with the Agency Agreement, and this fact is proved by the contemporaneous e-mails from Scott Newman, counsel to RAC's E&O insurer, Lexington, summarizing the terms of the settlement, and the reply e-mail from Mr. Jack, Clarendon's counsel. (Jack Affid. ¶¶ 11-17 and Exhs. A, B & C; Stinson Affid. ¶ 13; Sheehan Affid. ¶¶ 21-31).

2. Neither RAC nor any of its representatives at any time during the negotiation of the Settlement Agreement mentioned or proposed any amendment, superseding or novation thereby of the Agency Agreement. (Jack Affid. ¶ 13 ; Stinson Affid. ¶ 14; Sheehan Affid. ¶¶ 21, 31).

3. No consideration was provided by RAC pursuant to the Settlement Agreement in exchange for Clarendon's purported release of RAC's obligation to pay Excess Commission in accordance with the Agency Agreement. (Stinson Affid. ¶¶ 17-18; Sheehan Affid. ¶¶ 22, 30).

4. No consideration could have been provided by RAC to support Clarendon's release of RAC's obligation to pay Excess Commission in accordance with the Settlement Agreement because its insurance policy with Lexington expressly excluded any coverage for return commission obligations and RAC had no E&O coverage other than its policy with Lexington. (Id; Russ Affid., Exh. E).

5. Clarendon's claim for return of Excess Commission did not accrue until April 30th, 2009 and as such was a future claim that neither could have been nor was, under the express terms of the Settlement Agreement, released in February 2008. (Cuadra Decl., Exh. A, Schedule C and Article 3; Exh. B, ¶¶ 1, 2 and 3; Alvarez Decl. Exhs. B, C and D; Sheehan Affid. ¶¶ 17-24).

6. At the time of the Settlement Agreement's negotiation and execution, Clarendon could have had no idea what its future claim(s) for Excess Commission, if any, would be and accordingly had no ability to determine what an appropriate consideration for the release of such a potential claim might be. (Cuadra Decl., Exh. A, Schedule C and Article 3; Sheehan Affid. ¶¶ 21).

Commission Adjustments Under the Agency Agreement

7. By signing Addendum No. 5 to the Agency Agreement, RAC expressly agreed that, apart from amending the initial and sliding scale commission rates as set forth in the Addendum, it wished to "otherwise ratify [its] obligations under the Agreement." (Cuadra Decl., Exh. A, court-numbered pages 62-63 of 84). Thus, only one or two weeks after its execution of the Settlement Agreement, RAC conclusively admitted that the Cuquejo Claim had absolutely no effect upon its obligations with respect to commission under the Agency Agreement. Id.

8. Even assuming, arguendo, that the effect of the Cuquejo Claim were to be excluded from the calculation of adjusted commission, RAC's calculation of adjusted commission as of April 30, 2009 would be incorrect because it fails to deduct the Cuquejo-related premium from the loss-ratio calculation. (Alvarez Decl., Exh. D, court-numbered page 28 of 28).

9. RAC also admitted that the Cuquejo Claim losses were properly included in the calculation of adjusted commission under the Agency Agreement by including at least $300,000 of Clarendon's net $1.3 million of Cuquejo losses in its calculation of adjusted commission as of April 30, 2009. (Alvarez Decl., Exh. D, court-numbered page 28 of 28). There is no rational or lawful basis for RAC's doing so given that the entire $1.3 million of net Cuquejo Claim losses were losses paid by Clarendon and properly included in the adjusted commission calculation pursuant to the Agency Agreement. Id.

10. It is standard practice in the insurance industry for a general agent such as RAC, whose commission is keyed to loss ratio, to "follow the fortunes" of the insurer and reinsurer with respect to sharing the actual losses and expenses incurred in the administration of claims, including extra-contractual obligations and losses in excess of policy limits such as those at issue with respect to the Cuquejo Claim. (Sheehan Affid., ¶ 20).

The Distinction between RAC's Capacities as General Agent and Claims Administrator

11. RAC's policy administration and claims administration functions and personnel were strictly segregated in accordance with industry practice and standards, audit principles, and practical necessity. (Sheehan Affid. ¶¶ 3-8; Answer, Exh. B; Cuadra Decl., Exhs. A, B).

12. Enrique Cuadra was the managing partner in charge of RAC's claims administration on behalf of Clarendon pursuant to the Claims Administration Agreement and Luis Alvarez was the managing partner in charge of the administration of Clarendon's policies under the Agency Agreement. (Sheehan Affid. ¶ 8).

Dated: April 6, 2011

CASE NO.: 1:10-cv-24143 – MORENO/TORRES

Respectfully submitted,

  /s/ Blake S. Sando           .
Blake S. Sando (FBN: 939293)
E-mail: Blake.Sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 S. Dadeland Boulevard
Suite 1400
Miami, Florida 33156
Tel:     305-350-5300
Fax:    305-373-2294

  /s/ Adam H. Russ           
Adam H. Russ (Pro Hac Vice)
E-mail:  adam@wassruss.com
Wasser & Russ, LLP
80 Maiden Lane, Suite 1502
New York, NY 10038
Tel:     212-430-6040
Fax:    212-430-6041
Attorneys for Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro-se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Ann Marie St. Peter-Griffith
Email: astpetergriffith@kasowitz.com
Kasowitz Benson Torres & Friedman LLP
1441 Brickell Avenue, Suite 1420
Miami, FL 33131