UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RAC Insurance Partners, LLC, )
Plaintiff )
 )  Case No.1:10-cv-24142-FAM
 )
v. )
 )
Clarendon National Insurance Company, )
Defendant. )
 )
_____ )

## AFFIDAVIT OF BARRY STINSON IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STATE OF FLORIDA )
 ) ss.:
COUNTY OF ORANGE )

Barry Stinson, being duly sworn, deposes and says:

1. I am a Senior Vice President of Claims of the above-named defendant, Clarendon National Insurance Company ("Clarendon"), a property casualty insurance company, and served in this capacity during all times relevant to this proceeding. I make this affidavit based upon my personal knowledge, the documents and records in my possession, and, where so indicated, my information and belief, in opposition to Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 56.

### The Claims Administration Agreement

2. In or about April 1, 2003, Clarendon and Plaintiff, RAC Insurance Partners, LLC ("RAC"), entered into a Claims Administration Agreement under which RAC agreed to provide claims administration services in connection with claims arising under policies issued by Clarendon for a private passenger automobile insurance program ("Claims Administration

Agreement"). Attached hereto as Exhibit A is a true and correct copy of the Claims Administration Agreement.

3. During all times relevant to this proceeding I was responsible for supervising RAC's performance under and compliance with the Claims Administration Agreement.

4. The individual at RAC whom I dealt with respect to claims administration and compliance with the Claims Administration Agreement was Enrique Cuadra, who, on information and belief, was the principal and officer of RAC who supervised and managed claims administration on a day-to-day basis.

**The Cuquejo Claim and the Settlement Agreement**

5. One of the many claims administered by RAC under the Claims Administration Agreement involved an accident in November 2004 between a Clarendon insured, Mr. Olortegui, and a seriously injured third party, Mr. Cuquejo. Mr. Olortegui was sued by Mr. Cuquejo's guardian. Mr. Olortegui filed a claim (the "Cuquejo Claim") with RAC, as Clarendon's claims administrator, and a bad faith action against Clarendon was subsequently threatened, alleging improper administration of the Cuquejo Claim. Clarendon in turn sought recovery from RAC as claims administrator under the Claims Administration Agreement.

6. I was directly involved in the litigation and settlement of the Cuquejo Claim on behalf of Clarendon including, but not limited to the negotiation and execution of the Settlement Agreement (defined below).

7. Clarendon was represented in the negotiation of the Settlement Agreement (defined below) by attorney Lewis N. Jack, Jr.

8. In or about February, 2008, RAC, Clarendon and their respective errors and omissions ("E&O") insurers – Lexington Insurance Company, RAC's E&O insurer

("Lexington"), Columbia Casualty Company, Clarendon's primary layer E&O Insurer ("CCC") and Illinois Union Insurance Company, Clarendon's excess E&O insurer ("Illinois Union") – entered into a Settlement Agreement and Release ("Settlement Agreement"). Under the terms of the Settlement Agreement, Lexington agreed to contribute $2 million to the $12.5 million settlement of the Cuquejo Claim. CCC, Clarendon's primary E&O insurer, contributed $9.2 million, and Clarendon paid the remaining $1.3 million from its own pocket.

9. RAC itself contributed no funds to the settlement of the Cuquejo Claim.

10. In exchange for Lexington's contribution of $2 million, Clarendon, CCC and Illinois Union agreed to release any and all claims they had or might have had against RAC and/or Lexington as a result of RAC's administration (*i.e.*, mishandling) of the Cuquejo Claim.

11. The predicate and scope of Clarendon's (and its E&O insurers') release of RAC is set forth in the Second and Third WHEREAS clauses of the Settlement Agreement, which provide as follows:

> WHEREAS, Ciro Olortegui was insured under a policy of automobile liability insurance with Clarendon, which had an agreement with RAC whereby RAC would adjust claims and suits against Clarendon insureds, such as the lawsuit filed by Marlene Cuquejo against Ciro Olortegui; and
>
> WHEREAS, the events related to the lawsuit filed by Marlene Cuquejo against Ciro Olortegui gave rise to a purported bad faith claim by Olortegui against Clarendon which, in turn, gave rise to a purported errors and omissions claim by Clarendon, Columbia and Illinois Union against RAC and its insurer, Lexington;

(Cuadra Decl., Exh. B, first page).

12. At no point during the negotiation of the Settlement Agreement did the parties discuss RAC's ongoing obligations to Clarendon under the separate and distinct Agency Agreement between RAC and Clarendon.

13. None of the parties to the Settlement Agreement, including RAC and Lexington, ever intended that the Settlement Agreement would relate to or release RAC from its obligation to pay Excess Commission in accordance with the Agency Agreement.

14. Neither RAC nor any of its representatives at any time during the negotiation of the Settlement Agreement mentioned or proposed any amendment, superseding or novation thereby of the Agency Agreement.

15. In accordance with the foregoing, the Settlement Agreement expressly mentions and references the Claims Administration Agreement, and Clarendon, CCC and Illinois Union's release of claims thereunder, but contains no mention of or reference to the Agency Agreement or any claim or right of Clarendon arising thereunder.

16. In fact, if any suggestion of amending the Agency Agreement or modifying any right of Clarendon to commission thereunder had been made during the negotiation of the Settlement Agreement, Clarendon would have rejected it, since it would have meant forfeiting claims that had not yet accrued and whose amount could not be foreseen.

17. Upon information and belief, no consideration was provided by RAC pursuant to the Settlement Agreement in exchange for Clarendon's purported release of RAC's obligation to pay Excess Commission in accordance with the Agency Agreement.

18. Upon information and belief, no consideration could have been provided by RAC to support Clarendon's release of RAC's obligation to pay Excess Commission in accordance with the Settlement Agreement because the only consideration for Clarendon's release was the proceeds of the Lexington E&O policy and, upon information and belief, that policy expressly excludes any coverage for return commission obligations. Thus, the Settlement Agreement

neither purports to have, nor does have, any bearing or effect upon the Excess Commission due Clarendon from RAC and its principals under the Agency Agreement.

WHEREFORE, it is respectfully requested that the Court deny Plaintiff's motion for summary judgment in its entirety and grant such other and further relief as it deems just, proper and equitable.

Dated: March 31, 2011

BARRY STINSON

Sworn to before me
this 31 day of March, 2011

Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
Michelle R. Webb
Commission # DD725667
Expires: FEB. 10, 2012
BONDED THRU ATLANTIC BONDING CO., INC.