UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

CLARENDON NATIONAL INSURANCE     :
COMPANY,     :     Case No. 10 CV 7993 (RMB)
    :
               Plaintiff,     :
    :     **DEFENDANTS' ANSWER**
         - against -     :
    :
RAC INSURANCE PARTNERS, LLC,     :
LUIS ALVAREZ AND ENRIQUE CUADRA,     :
    :
            Defendants.     :

------------------------------------------------------------ x

      Defendants RAC Insurance Partners, LLC ("RAC"), Luis Alvarez ("Alvarez") and

Enrique Cuadra ("Cuadra") (collectively, "Defendants") hereby file their Answer to the

Complaint filed by Plaintiff Clarendon National Insurance Company ("Clarendon" or

"Plaintiff"), on September 1, 2010 (the "Complaint").  Except as expressly admitted in the

correspondingly numbered paragraphs to the Complaint below, Defendants deny all other

allegations in the Complaint.

## PARTIES, JURISDICTION AND VENUE

      1.       Defendants admit the allegations contained in Paragraph 1 of the Complaint.

      2.       Defendants admit the allegations contained in Paragraph 2 of the Complaint.

      3.       Defendants admit that Alvarez and Cuadra are natural persons and citizens of the

State of Florida.  Defendants deny that Alvarez and Cuadra are currently principal shareholders

of RAC, and otherwise deny any remaining allegations contained in Paragraph 3 of the

Complaint.

      4.       Defendants admit that RAC entered into a General Agency Agreement ("GAA")

with Clarendon, which appears to be attached to the Complaint as Exhibit A.  Defendants submit

that the terms of the GAA and any attachments thereto speak for themselves, and the allegations in Paragraph 4 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any obligations are currently due and owing to Plaintiff under the GAA and deny the remaining allegations contained in Paragraph 4 of the Complaint.

5.      Defendants admit that RAC entered into the GAA with Clarendon that contains Section 9.6. Defendants submit that the terms of the GAA speak for themselves, and the allegations in Paragraph 5 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that any obligations are currently due and owing to the Plaintiff under the GAA and deny the remaining allegations contained in Paragraph 5 of the Complaint.

6.      Defendants admit that RAC entered into the GAA with Clarendon that contains Section 9.7. Defendants submit that the terms of Section 9.7 of the GAA speak for themselves, and the allegations in Paragraph 6 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 6 of the Complaint.

**PROVISIONS OF THE GAA RELEVANT TO THE DISPUTE**

7.      Defendants admit that RAC entered into the GAA with Clarendon. Defendants submit that those terms delineating RAC's obligations speak for themselves and the allegations in Paragraph 7 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that any obligations are currently due and owing to Clarendon under the GAA and deny any remaining allegations contained in Paragraph 7 of the Complaint.

8.      Defendants admit that RAC entered into the GAA with Clarendon that contains Article 3 and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Article 3 of the GAA speak for themselves and the allegations in Paragraph 8

state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 8 of the Complaint.

9. Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Section 1.1 of the GAA, Article 3 of the GAA, and Exhibit C to the GAA, speak for themselves and the allegations in Paragraph 9 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 9 of the Complaint.

10. Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Article 3 of the GAA, and Exhibit C to the GAA, speak for themselves and the allegations in Paragraph 10 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 10 of the Complaint.

11. Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Article 3 of the GAA, and Exhibit C to the GAA, speak for themselves, and the allegations in Paragraph 11 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 11 of the Complaint.

12. Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Exhibit C to the GAA speak for themselves, and the allegations in Paragraph 12 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 12 of the Complaint.

13.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Article 3 of the GAA, and Exhibit C to the GAA, speak for themselves, and the allegations in Paragraph 13 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 13 of the Complaint.

14.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Article 3 of the GAA speak for themselves, and the allegations in Paragraph 14 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that RAC is obligated to return to Clarendon any commission amounts previously paid to it. Defendants deny any remaining allegations contained in Paragraph 14 of the Complaint.

15.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of Section 2.5 of the GAA, and Exhibit C to the GAA, speak for themselves, and the allegations in Paragraph 15 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 15 of the Complaint.

16.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA. Defendants submit that the terms of QS Treaty attached to the Complaint as Exhibit B speak for themselves, and the allegations in Paragraph 16 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that RAC is obligated to return to Clarendon any commission amounts previously paid to it, or that Clarendon is due or is allowed to retain any ceding commission. Defendants deny any remaining allegations contained in Paragraph 16 of the Complaint.

17.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA.  Defendants submit that the terms of QS Treaty attached to the Complaint as Exhibit B speak for themselves, and the allegations in Paragraph 17 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that RAC is obligated to return to Clarendon any commission amounts previously paid to it, or that Clarendon is due or is allowed to retain any ceding commission. Defendants deny any remaining allegations contained in Paragraph 17 of the Complaint.

18.     Defendants admit that RAC entered into the GAA with Clarendon and that RAC was entitled to certain commissions under the GAA.  Defendants submit that the terms of Exhibit C to the GAA speak for themselves, and the allegations in Paragraph 18 state a legal conclusion as to those terms to which no response is necessary.  Defendants deny that RAC is obligated to return to Clarendon any commission amounts previously paid to it, or that Clarendon is due or is allowed to retain any ceding commission attributable to "Loss" or "Loss Expense".  Defendants deny any remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants admit that RAC entered into the GAA with Clarendon.  Defendants submit that the terms of QS Treaty attached to the Complaint as Exhibit B speak for themselves, and the allegations in Paragraph 19 state a legal conclusion as to those terms to which no response is necessary.  Defendants deny that RAC is obligated to return to Clarendon any commission amounts previously paid to it, or that Clarendon is due or is allowed to retain any ceding commission attributable to "Loss" or "Loss Expense".  Defendants deny any remaining allegations contained in Paragraph 19 of the Complaint.

20.     Defendants admit that RAC entered into the GAA with Clarendon.  Defendants submit that the terms of Section 9.4 of the GAA speak for themselves, and the allegations in

Paragraph 20 state a legal conclusion as to those terms to which no response is necessary. Defendants deny that they are liable for any purported untimely payment of any "Trust Funds", including premiums or return premiums. Defendants deny any remaining allegations contained in Paragraph 20 of the Complaint.

21.     Defendants admit that RAC entered into the GAA with Clarendon. Defendants submit that the terms of Section 9.4 of the GAA speak for themselves, and the allegations in Paragraph 21 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 21 of the Complaint.

22.     Defendants admit that Alvarez and Cuadra, as the then principal shareholders of RAC, executed the "Guarantee of Payment of Trust Funds" that is incorporated into the GAA as Schedule 3. Defendants deny any remaining allegations contained in Paragraph 22 of the Complaint.

23.     Defendants admit that Alvarez and Cuadra executed the "Guarantee of Payment of Trust Funds" that is incorporated into the GAA as Schedule 3. Defendants submit that the terms of Schedule 3 speak for themselves, and the allegations in Paragraph 23 state a legal conclusion as to those terms to which no response is necessary. Defendants deny any remaining allegations contained in Paragraph 23 of the Complaint.

**THE DISPUTE**

24.     Defendants admit that Clarendon purported to calculate an Adjusted Commission, but denies that the Adjusted Commission Clarendon calculated is accurate or that any monies are due and owing to Clarendon from Defendants based upon that purported calculation. Defendants deny any remaining allegations contained in Paragraph 24 of the Complaint.

25. Defendants admit that Clarendon purported to calculate an Adjusted Commission, but denies that the Adjusted Commission Clarendon calculated is accurate or that any monies or "Excess Commissions" are due and owing to Clarendon from Defendants based upon that purported calculation. Defendants deny any remaining allegations contained in Paragraph 25 of the Complaint.

26. Defendants admit that Clarendon's purported Adjusted Commission's calculation was attributable to a large claim which occurred in the 2004-2005 Agreement Year and settled in 2008 (the "Cuquejo Claim"). Defendants admit that Clarendon purported to calculate an Adjusted Commission, but deny that the Adjusted Commission Clarendon calculated is accurate or that any monies or "Excess Commissions" are due and owing to Clarendon from Defendants based upon that purported calculation. Defendants deny any remaining allegations contained in Paragraph 26 of the Complaint.

27. Defendants admit that by letter dated August 17, 2010, Clarendon made a demand upon RAC, and Alvarez and Cuadra individually.

28. Defendants admit that on or about August 26, 2010 RAC remitted $33,768.57 to Clarendon via wire transfer on account of the Excess Commission due Clarendon.

29. Defendants admit that Clarendon is seeking to collect $540,123.14 in Excess Commission from the Defendants, which the Defendants have not paid and are not obligated to remit. Defendants deny any Excess Commission is due and owing to Clarendon, and otherwise deny the remaining allegations contained in Paragraph 29 of the Complaint.

30. Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31. Defendants deny the allegations contained in Paragraph 31 of the Complaint.

**AS AND FOR A FIRST CAUSE OF ACTION**
**AGAINST RAC FOR BREACH OF CONTACT**

32.     Defendants incorporate by reference their responses to Paragraphs 1 through 31 as if fully set forth herein.

33.     Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.     Defendants deny that any Excess Commission is due to Clarendon, but admit that they have not paid $540,123.14 that Clarendon is improperly demanding.  Defendants otherwise deny the remaining allegations contained in Paragraph 34 of the Complaint.

35.     Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations contained in Paragraph 36 of the Complaint.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST RAC FOR BREACH OF FIDUCIARY DUTY**

37.     Defendants incorporate by reference their responses to Paragraphs 1 through 36 as if fully set forth herein.

38.     Defendants admit that RAC owes Clarendon certain fiduciary duties under the GAA, but denies that any funds are due to Clarendon or that RAC is a fiduciary with respect to the amounts Clarendon claims it is owed as Excess Commissions.  Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.     Defendants admit that RAC owes Clarendon certain duties under the GAA, but deny that any funds are due to Clarendon or that RAC is a fiduciary with respect to the amounts Clarendon claims it is owed as Excess Commissions.  Defendants deny the remaining allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations contained in Paragraph 41 of the Complaint.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST RAC FOR CONVERSION**

42.     Defendants incorporate by reference their responses to Paragraphs 1 through 41 as if fully set forth herein.

43.     Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44.     Defendants deny the allegations contained in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST ALVAREZ AND CUADRA UNDER THE GUARANTEE**

46.     Defendants incorporate by reference their responses to Paragraphs 1 through 45 as if fully set forth herein.

47.     Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants admit that Alvarez and Cuadra executed the Guarantee, but deny that any obligations are currently due and owing to Clarendon and submit that the terms of the Guarantee speak for themselves.  Defendants deny the remaining allegations contained in Paragraph 49 of the Complaint.

50.     Defendants admit that Clarendon has demanded payment from RAC for $573,891.71 and that RAC paid to Clarendon $33,768.57 for the amounts not attributable to the Cuquejo Claim.  Defendants deny that Clarendon's demand for the remaining $540,123.14 is proper or sufficient, and further deny that any amount is due and owing from RAC to Clarendon. Defendants deny the remaining allegations contained in Paragraph 50 of the Complaint.

51.     Defendants admit that Clarendon is seeking payment of $540,123.14 in purported Excess Commissions and that Alvarez and Cuadra have not paid that amount.  Defendants deny that Clarendon's demand for the remaining $540,123.14 is proper or sufficient, and further

9

denies that any amount is due and owing from Alvarez or Cuadra to Clarendon. Defendants

deny the remaining allegations contained in Paragraph 51 of the Complaint.

52.     Defendants deny the allegations contained in Paragraph 52 of the Complaint.

Defendants deny each demand for judgment asserted by Clarendon as set forth in its

unnumbered WHEREFORE prayer for relief contained on page 10 of its Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Clarendon has failed to sufficiently state a cause of action for breach of contract, breach

of fiduciary duty, conversion, or for a claim asserted under the guarantee provided by Alvarez

and Cuadra.

### SECOND AFFIRMATIVE DEFENSE

Clarendon's claims are barred because Clarendon expressly released RAC, as well as

Alvarez and Cuadra, from them in a settlement agreement and release dated February 26, 2008

("Settlement Agreement"), attached hereto as Exhibit A, and is incorporated by reference herein.

### THIRD AFFIRMATIVE DEFENSE

Clarendon's claims are barred because Clarendon agreed to novate their terms and

supercede their terms under the terms of, and to the extent of, the Settlement Agreement.

Clarendon's claims are barred by its own release and consent, and/or by promissory estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Clarendon's claims are barred, in whole or in part, by the parties' accord and satisfaction,

and Clarendon's full acceptance of satisfaction of the claims asserted in its Complaint. As a

result, Clarendon's claims are barred by the doctrines of release, accord and satisfaction,

acquiescence, ratification, compromise and/or settlement.

## FIFTH AFFIRMATIVE DEFENSE

Clarendon's claims are barred, in whole or in part, by the terms of the GAA and any and all attachments thereto, including, without limitation Schedule 3, the Guarantee, because all of Defendants' obligations under the same have been fully satisfied and no purported breach has occurred.

## SIXTH AFFIRMATIVE DEFENSE

Clarendon's claims against Defendants are barred because the alleged damages, if any, were caused, in whole or in part, by Clarendon's own acts or the acts of individuals or entities other than Defendants.

## SEVENTH AFFIRMATIVE DEFENSE

Clarendon has failed to mitigate, minimize or avoid the damages it allegedly suffered.

## EIGHTH AFFIRMATIVE DEFENSE

Clarendon's claims are barred as a matter of law because it has not suffered any actual damages.

## NINTH AFFIRMATIVE DEFENSE

Clarendon's claims are barred, in whole or in part, because Defendants had the authority, legal right, necessity, and/or were justified and privileged to act as they did.

## TENTH AFFIRMATIVE DEFENSE

Clarendon has failed to properly satisfy all conditions precedent to bringing this action.

## ELEVENTH AFFIRMATIVE DEFENSE

Venue is improper in New York under the terms of the Settlement Agreement, and Florida is the proper and more convenient forum.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants specifically reserve the right to assert additional defenses as discovery or other factual developments reveal further facts and defenses.

**WHEREFORE**, based upon the foregoing, Defendants request that this Court deny the relief sought in Clarendon's Complaint, dismiss this action with prejudice, grant Defendants their costs, attorneys' fees and expenses in defending this action and award Defendants such other and further relief as justice requires.

Dated: New York, New York
        November 19, 2010

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By:___/s/ Kara F. Headley_____
    Kara F. Headley
1633 Broadway
New York, New York 10019
(212) 506-1700
(212) 506-1800 (fax)
kheadley@kasowitz.com

- and -

Marcos Daniel Jimenez
(mjimenez@kasowitz.com)
Ann M. St. Peter-Griffith
(astpetergriffith@kasowitz.com)
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
The Four Seasons Tower
1441 Brickell Avenue
Suite 1420
Miami, Florida 33131
(305) 377-1666
(305) 377-1664 (fax)

Attorneys for Defendants RAC Insurance Partners,
LLC, Luis Alvarez and Enrique Cuadra

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between Lexington Insurance Company ("Lexington"), RAC Insurance Partners, LLC ("RAC"), Clarendon National Insurance Company ("Clarendon"), Columbia Casualty Company ("Columbia"), and Illinois Union Insurance Company ("Illinois Union").

WHEREAS, Marlene Cuquejo, as plenary guardian of the person and property of Alfredo Severino Cuquejo, Jr., filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, against Ciro Ergasto Olortegui, as a result of an automobile accident that occurred on or about November 14, 2004; and

WHEREAS, Ciro Olortegui was insured under a policy of automobile liability insurance with Clarendon, which had an agreement with RAC whereby RAC would adjust claims and suits against Clarendon insureds, such as the lawsuit filed by Marlene Cuquejo against Ciro Olortegui; and

WHEREAS, the events related to the lawsuit filed by Marlene Cuquejo against Ciro Olortegui gave rise to a purported bad faith claim by Olortegui against Clarendon which, in turn, gave rise to a purported errors and omissions claim by Clarendon, Columbia and Illinois Union against RAC and its insurer, Lexington; and

WHEREAS, Lexington, RAC, Clarendon, Columbia and Illinois Union wish to settle and resolve completely all claims and disputes which Clarendon, Columbia and Illinois Union have or may have had against RAC and/or Lexington as a result of the circumstances and events described above.

NOW, THEREFORE, Lexington, RAC, Clarendon, Columbia and Illinois Union, for the mutual consideration of the premises and acts taken and stated herein, agree as follows:

1.  Lexington, pursuant to a policy of errors and omissions insurance bearing Policy No. 5641538, with effective dates of 6/14/05 to 6/14/06, agrees to pay on behalf of RAC the sum of Two Million Dollars ($2,000,000.00) in settlement of any and all claims or causes of action asserted or which could have been asserted by Clarendon, Columbia or Illinois Union against RAC or Lexington regarding any claim for reimbursement of defense and/or indemnity related to the claims arising from the automobile accident of November 14, 2004.



EXHIBIT

A

2.    Clarendon, Columbia and Illinois Union hereby fully release, acquit, and forever discharge RAC and Lexington and their predecessors and successors and their respective shareholders, executors, administrators, representatives, agents, officers, directors, servants and employees from and for any and all claims, demands, obligations, liabilities, or causes of action of any kind whatsoever, whether in law or in equity, statutory or otherwise, whether or not presently known or contemplated, which have been, could have been, or might have been asserted as a result of the events related to or concerning the automobile accident that occurred on November 14, 2004, including, but not limited to, any and all claims specifically related to allegations of improper claim handling, professional liability or bad faith on the part of RAC Insurance Partners, LLC.

3.    By way of this Agreement, RAC and Lexington satisfy and are hereby discharged from any and all liability to Clarendon, Columbia and Illinois Union, with respect to the lawsuit filed by Marlene Cuquejo and/or the potential bad faith claim by Ciro Olortegui against Clarendon and its insurers. It is the intention of the parties to this Agreement to extinguish any potential liability on the part of RAC and Lexington for contribution, indemnity, subrogation, equitable subrogation, and/or proration, including, but not limited to, both defense and indemnity, which might be claimed against RAC and/or Lexington by Clarendon, Columbia or Illinois Union and/or by any other person or entity for the matters released hereinabove.

4.    The parties have entered into this Agreement as a matter of compromise and settlement and nothing herein shall be construed as indicating, acknowledging, or conceding any position taken by any party with respect to the lawsuit filed by Marlene Cuquejo, the purported bad faith claim of Ciro Olortegui against Clarendon, or the purported claims of Clarendon, Columbia and Illinois Union against RAC and/or Lexington, or the parties' respective rights and obligations, if any, under their respective insurance policies or any other insurance policies. This Agreement and the payment described herein by Lexington on behalf of RAC are for the negotiated compromise of a disputed claim and shall not be construed as an admission by RAC or Lexington that any coverage or liability exists for defense, indemnity or any other matter in connection with the lawsuit filed by Marlene Cuquejo, the purported bad faith claim of Ciro Olortegui against Clarendon, or the purported claims by Clarendon, Columbia and Illinois Union against RAC and/or Lexington.

5.    The parties agree that all of them have acted in good faith and in accordance with the highest standard of business and that all applicable laws and good business practices have been met in connection with this Agreement.

6.    The parties shall cooperate to carry out the terms of this Agreement, including, but not limited to, executing and delivering documents required and necessary to carry out more fully the terms and provisions of this Agreement.

2

7.     This Agreement is intended to confer rights and benefits only on the parties hereto and is not intended to confer any right or benefit upon any other person or entity. No person or entity other than the parties hereto shall have any legal enforceable right under this Agreement. Any rights of action for any breach of this Agreement are hereby preserved to the parties hereto.

8.     The wording of this Agreement was negotiated, reviewed and accepted by legal counsel for all parties prior to its being executed by them, and no party hereto shall be entitled to have any wording or disagreement construed against them in the event of any dispute arising among them in accordance and connection with it.

9.     This Agreement is and shall be binding upon the parties, their respective parents, owners, subsidiaries, agents, predecessors, successors, assigns, trustees and any committee or other arrangement of creditors organized with respect to the affairs of any of them, as this Agreement pertains to the matters released herein.

10.    The parties represent and warrant:

(a)     that they have taken all necessary corporate or legal actions to duly approve the making and performance of this Agreement and that no further corporate or other approval is necessary;

(b)     that the individual executing this Agreement on behalf of such party is fully authorized by such party to so act on its behalf; and

(c)     that the making and performance of this Agreement shall not violate any provision of law or their respective charters, articles of incorporation, or by-laws, or agreement, if any, with other parties.

11.    This document contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions, agreements and understandings, both oral and written, among the parties with respect thereto.    No inducement, warranty or representation other than as set forth herein was made, offered, relied or agreed upon.  This Agreement may not be amended except by written agreement signed by all the parties.  The terms of this Settlement Agreement and Release, and all provisions set forth herein, are contractual and not merely a recital.

12.    The parties agree that if the facts with respect to which this Agreement is executed are found to be different from the facts now believed to be true, this Agreement shall remain effective, notwithstanding such difference in facts, absent fraud or misrepresentation.

3

13. This Agreement shall be governed and construed in accordance with the internal law of the State of Florida, and any action to enforce this Agreement shall be brought in the State of Florida.

14. This Agreement may be executed by the parties in multiple counterparts, each of which shall be deemed an original and each of which together shall be deemed one and the same instrument. An original signature page shall be provided by all parties hereto to counsel for Lexington. The parties further agree that copies of the original signature pages will suffice as an original when the final and fully executed document has been provided and compiled. A fully executed copy of the Agreement shall be distributed to each party. This Agreement will be effective on the date that all parties have executed this Agreement. If the parties execute this Agreement on different dates, this Agreement will become effective on the date the last party executes this Agreement.

IN WITNESS WHEREOF the parties have executed this Settlement Agreement and Release on the dates shown on the respective signature pages.

4

LEXINGTON INSURANCE COMPANY

By: _Tomas Cromwart_

Title: _Assistant Vice President_

Date: _2/21/05_

RAC INSURANCE PARTNERS, LLC

By: _ENRIQUE A. CUADRA_
Title: _MANAGING PARTNER_
Date: _2-25-08_

6

CLARENDON NATIONAL INSURANCE COMPANY

By: _Barry W. Stinson_
Title: _Se. Vice, President_
Date: _2/26/08_

7

COLUMBIA CASUALTY COMPANY

*Erin Martens*

By: Erin Martens
Title: Claims Consultant
Date: January 29, 2008

8

ILLINOIS UNION INSURANCE COMPANY

By: GREGORY BROWN,
Title: COUNSEL AND ATTORNEY IN FACT FOR
Date: ILLINOIS UNION.          1·31·08