UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RAC Insurance Partners, LLC,           )
Plaintiff                              )
                                       )         Case No.1:10-cv-24142-FAM
v.                                     )
                                       )
Clarendon National Insurance Company,  )
Defendant.                             )
                                       )
_____)

## AFFIDAVIT OF LEWIS N. JACK, JR.

STATE OF FLORIDA            )
                            ) ss.:
COUNTY OF MIAMI-DADE        )

Lewis N. Jack, Jr., being duly sworn, deposes and says:

1.      I am a member of the law firm of Josephs Jack, and have been admitted to
practice law in the State of Florida and before this Court since 1973.  I make this affidavit based
upon my personal knowledge, the documents and records in my possession, and, where so
indicated, my information and belief.

### The Claims Administration Agreement

2.      Upon information and belief, Clarendon National Insurance Company
("Clarendon") entered into an agreement with RAC Insurance Partners, LLC ("RAC") whereby
RAC would adjust claims and suits against Clarendon insureds.

### The Cuquejo Claim and the Settlement Agreement

3.      I was retained by Clarendon to represent it in connection with a bad faith claim
arising from a claim administered by RAC under its agreement to adjust claims with Clarendon

- 1 -

(*i.e.*, the Cuquejo Claim – defined below).  The bad faith claim arose out of an accident in November 2004 between a Clarendon insured, Mr. Olortegui, and a seriously injured third party, Mr. Cuquejo.  Mr. Olortegui was sued by Mr. Cuquejo's guardian.  RAC, as Clarendon's claims administrator, assumed responsibility for adjusting Mr. Cuquejo's claim (the "Cuquejo Claim").  Subsequently Mr. Cueqejo threatened a bad faith action against Clarendon based upon improper handling of the Cuquejo Claim.  Clarendon in turn sought recovery from RAC as claims administrator under their agreement.

4.      I was directly involved in negotiation of the Settlement Agreement (defined below).

5.      I worked with Clarendon's Senior Vice President of Claims, Barry Stinson, in connection with the negotiation of the Settlement Agreement (defined below).

6.      Clarendon, RAC and their respective errors and omissions ("E&O") insurers were each represented by counsel in the negotiation of the Settlement Agreement.

7.      In or about February, 2008, RAC, Clarendon and their respective E&O insurers – Lexington Insurance Company, RAC's E&O insurer ("Lexington"), Columbia Casualty Company, Clarendon's primary layer E&O Insurer ("CCC"), and Illinois Union Insurance Company, Clarendon's excess E&O insurer ("Illinois Union") – entered into a Settlement Agreement and Release ("Settlement Agreement").  Under the terms of the Settlement Agreement, Lexington agreed to contribute $2 million to the $12.5 million settlement of the Cuquejo Claim.  CCC, Clarendon's primary E&O insurer, contributed $9.2 million, and Clarendon paid the remaining $1.3 million from its own pocket.  A true and correct copy of the January 15, 2008 email from Lexington's counsel, Scott Newman, setting forth the foregoing contribution amounts is attached hereto as Exhibit A.

8.      RAC itself contributed no funds to the settlement of the Cuquejo Claim.

9.      In exchange for Lexington's contribution of $2 million, Clarendon, CCC and Illinois Union agreed to release any and all claims they had or might have had against RAC and/or Lexington as a result of RAC's administration (*i.e.*, mishandling) of the Cuquejo Claim.

10.     The predicate and scope of Clarendon's (and its E&O insurers') release of RAC is set forth in the Second and Third WHEREAS clauses of the Settlement Agreement, which provide as follows:

> WHEREAS, Ciro Olortegui was insured under a policy of automobile liability insurance with Clarendon, which had an agreement with RAC whereby RAC would adjust claims and suits against Clarendon insureds, such as the lawsuit filed by Marlene Cuquejo against Ciro Olortegui; and
>
> WHEREAS, the events related to the lawsuit filed by Marlene Cuquejo against Ciro Olortegui gave rise to a purported bad faith claim by Olortegui against Clarendon which, in turn, gave rise to a purported errors and omissions claim by Clarendon, Columbia and Illinois Union against RAC and its insurer, Lexington;
>
> (Cuadra Decl., Exh. B, first page).

11.     At no point during the negotiation of the Settlement Agreement did the parties discuss RAC's ongoing obligations to Clarendon under any agency agreement between RAC and Clarendon.

12.     At no time during the settlement discussions was there any discussion regarding the release of RAC from any obligation pertaining to adjusted commission or excess commission due Clarendon under any agency agreement.

13.     Neither RAC nor any of its representatives at any time during the negotiation of the Settlement Agreement mentioned or proposed any amendment, superseding or novation thereby of any agency agreement.

14.     In accordance with the foregoing, the Settlement Agreement expressly mentions and references an agreement whereby RAC agreed to adjust claims and suits against Clarendon insureds, and Clarendon, CCC and Illinois Union's release of claims thereunder, but contains no mention of or reference to any agency agreement or any claim or right of Clarendon arising thereunder.

15.     In fact, the contemporaneous emails between counsel during the drafting and negotiation of the Settlement Agreement establish that the claims being released under the Settlement Agreement were intentionally limited to the E&O claims arising out of the Cuquejo Claim litigation.

16.     For instance On January 11, 2008, Scott Newman, counsel to RAC's E&O insurer, Lexington, wrote an email to counsel to the other parties to the Settlement Agreement – including RAC's counsel, Francisco R. Angones, Esq.-- stating in relevant part as follows:

> On behalf of Lexington, please allow this to confirm the resolution of the potential E&O claims by Clarendon, Columbia Casualty and Illinois Union against Lexington's insured, RAC Partners, LLC.  In exchange for Lexington's agreement to pay its policy limits of $2 million, Clarendon, Columbia Casualty and Illinois Union will execute a full release of all claims against RAC arising out of and/or related to the underlying Cuquejo v Olortegui matter.

A true and correct copy of Mr. Newman's January 11, 2008 email from my files is attached hereto as Exhibit B.

17.     Forty-five minutes after Mr. Newman's e-mail (*see* ¶ 16, above) was sent, I replied: "Thanks.  No questions here …. The release by Clarendon in favor of RAC should be limited to this specific Cuquello [*sic*] case.  Lew." A true and correct copy of my January 11, 2008 email is attached hereto as Exhibit C – and, upon information and belief, was produced by RAC in connection with the instant dispute.

- 4 -

WHEREFORE, it is respectfully requested that the Court deny Plaintiff's motion for

summary judgment in its entirety and grant such other and further relief as it deems just, proper

and equitable.

Dated:  April 4, 2011

_____
LEWIS N. JACK, JR.

Sworn to before me
this **5th** day of April, 2011

Notary Public

CHARLOTTE FOWLER
Commission # DD 962269
Expires March 9, 2014
Bonded Thru Troy Fain Insurance 800-385-7019

- 5 -