UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  1:10-cv-24143-Moreno/Torres

RAC Insurance Partners, LLC, )
Plaintiff, )
 )
v. )
 )
Clarendon National Insurance Company, )
Defendant. )
 )
_____)

**REPLY TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN DISPUTE AND RESPONSE TO ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Southern District of Florida Local Rule 7.5, Plaintiff RAC Insurance Partners, LLC ("RAC"), hereby submits its Reply to the Statement of Material Facts in Dispute and Additional Undisputed Material Facts in Opposition to Plaintiff's Motion for Summary Judgment submitted by Defendant Clarendon National Insurance Company ("Clarendon").

**REPLY TO OPPOSITION TO RAC'S STATEMENT OF FACTS**

In its opposition statement of fact, Clarendon offers no opposition whatsoever to RAC's Statement of Undisputed Facts [D.E 21] ("SOF") Paragraphs 1, 2, 3, 4, 5, 7, 12, 15, 17, 19, 20, 24, 25, 27, 30, 31, 32, 33, and 35.  Those facts are unopposed and should be admitted as fact in this case.

6. <u>REPLY RAC SOF ¶ 6</u>:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 6, which should be deemed admitted. Clarendon appears to take issue with the question of whether Olortegui was actually an insured. While Clarendon paid on the Olortegui's purported policy, the Olortegui's policy was cancelled at the time of the Olortegui and Cuquejo accident.  However, whether the policy was operative or not at the time of the Cuquejo accident is immaterial to the release question before the Court.

8. <u>REPLY RAC SOF ¶ 8</u>:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 8, which should be deemed admitted. Clarendon's opposition merely provides more specificity as to the amount that Clarendon, among others, paid, which further supports RAC's Summary Judgment motion.

9. <u>REPLY RAC SOF ¶ 9</u>:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 9, which should be deemed admitted. The question of the scope and interpretation of the Settlement Agreement and Release ("Settlement Agreement")(Cuadra Decl. Exh. B) is a question for this Court construing the plain language of that agreement.  Clarendon's citations to the affidavits of Mr. Jack, Mr. Stinson, and Mr. Sheehan do not controvert that plain language or Clarendon's release obligations therein, or otherwise provide support for a position that the Settlement Agreement had no effect on the Agency Agreement.  Clarendon cannot invoke parol or other evidence to controvert the plain language of the Settlement Agreement.

10. <u>REPLY RAC SOF ¶ 10:</u>  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 10, which should be deemed admitted. RAC SOF ¶ 10 does not controvert or misstate Paragraph 13 of the Settlement Agreement.

11. <u>REPLY RAC SOF ¶ 11</u>:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 11, which should be deemed admitted. RAC does not dispute the plain language of the Fourth WHEREAS clause, but simply inserted a term it had defined earlier in the statement of fact.  The typeface of the Settlement Agreement is immaterial, and RAC's inclusion of emphasis does not create any issue of disputed fact.

13., 14. & 16. <u>REPLY RAC SOF ¶¶ 13, 14 & 16</u>:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶¶ 13, 14 and 16, which should be deemed admitted.  RAC does not dispute the plain language of Paragraphs 2, 3 & 11 of the Settlement Agreement clause, but simply inserted a term it had defined earlier in the

statement of fact. The typeface of the Settlement Agreement is immaterial, and RAC's inclusion of emphasis does not create any issue of disputed fact.

18.     REPLY RAC SOF ¶ 18:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 18, which should be deemed admitted. The question of the scope and interpretation of the Settlement Agreement is a question for this Court construing the plain language of the Settlement Agreement and Release. Clarendon's citation to the affidavits of Mr. Jack, Mr. Stinson, or Mr. Sheehan does not controvert that plain language or Clarendon's release obligations therein, or otherwise provide support for a position that the Settlement Agreement had no effect on the Agency Agreement. Clarendon cannot invoke parol or other evidence to controvert the plain language of the Settlement Agreement.

21. & 22.   REPLY RAC SOF ¶¶ 21 & 22:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶¶ 21 & 22, and in fact supports RAC's position that ¶¶ 21 & 22 are undisputed and should be deemed admitted. Clarendon contends the final sentence of SOF ¶ 22, but Clarendon's response, in fact, supports that statement, and amplifies it with additional facts established under Cuadra Decl. Exh. A of the Agency Agreement.

23.     REPLY RAC SOF ¶ 23:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 23, and in fact supports ¶ 23, which should be deemed admitted. Rather, Clarendon takes issue with whether the loss was calculated actually on April 30, 2009 or as of April 30, 2009. The actual date of the calculation is immaterial; the central fact is that as of April 30, 2009, Clarendon sought to collect from RAC an adjusted commission that, in part, was released. Notably, Clarendon revised its calculation in 2010, as set forth in RAC's SOF ¶ 24, which Clarendon does not contest.

26.     REPLY RAC SOF ¶ 26:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 26, which should be deemed admitted.

The only matter regarding the adjusted commission that is material is the fact that a portion of the adjusted commission Clarendon seeks to collect in the New York Action is attributable to the Cuquejo Claim and therefore released. Significantly, Clarendon does not dispute the calculation contained in the Alvarez Declaration ¶¶ 16 and 17, nor does the Sheehan Affidavit provide an alternative calculation to the excess commission. The letter from counsel cited as Exhibit D to the Russ Affidavit contains an immaterial typographical error referencing $514,000, instead of over $540,000; and does not controvert the Alvarez Declaration.

28.   REPLY RAC SOF ¶ 28:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 28, which should be deemed admitted. Rather, Clarendon appears to take issue with whether the express language of the Settlement Agreement released that portion of the claim Clarendon is pursuing in the New York Action attributable to the Cuquejo Claim.

29.   REPLY RAC SOF ¶ 29:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 29, which should be deemed admitted. The overall program loss ratios not attributable to the Cuquejo Claim are immaterial.

34.   REPLY RAC SOF ¶ 34:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 34, which should be deemed admitted. Clarendon's subjective interpretation of the Settlement Agreement is immaterial. Clarendon's citation to the affidavits of Mr. Jack, Mr. Stinson, or Mr. Sheehan does not controvert that plain language or Clarendon's release obligations therein, or otherwise provide support for a position that the Settlement Agreement had no effect on the Agency Agreement. Clarendon cannot invoke parol or other evidence to controvert the plain language of the Settlement Agreement, or otherwise challenge the consideration supporting the Settlement Agreement.

36.   REPLY RAC SOF ¶ 36:  Clarendon's opposition statement does not contest or provide contrary record support to oppose RAC's SOF ¶ 36, which should be deemed admitted.

The Sheehan Affidavit does nor provide any controverting evidence, nor are Clarendon's blanket, unsupported denials sufficient to contest this fact.

### RAC'S RESPONSE TO CLARENDON'S UNDISPUTED MATERIAL FACTS[1]

<u>RAC Responses to Def. Und. SOF ¶ ¶ 1, 2, 3, 4, 5, 6 & 7</u>: Undisputed; however, these facts are immaterial to entitlement to summary judgment and do not create an issue of fact that would preclude summary judgment in favor of RAC.

<u>RAC Response to Def. Und. SOF ¶ 8</u>: This fact lacks proper support to reference to specific provisions of the agreements referenced, and, in any event, is wholly immaterial and does not create an issue of fact that would preclude summary judgment in favor of RAC.

<u>RAC Response to Def. Und. SOF ¶ 9</u>: Undisputed; however, this fact is immaterial to entitlement to summary judgment and does not create an issue of fact that would preclude summary judgment in favor of RAC. There is no dispute that the Settlement Agreement and Release are governed by Florida law and enforceable by a court in Florida. (Cuadra Decl. Exh. B at Par. 13).

<u>RAC Response to Def. Und. SOF ¶¶ 10, 11, 12 & 13</u>: Undisputed; however these facts are immaterial to entitlement to summary judgment and do not create an issue of fact that would preclude summary judgment in favor of RAC. There is no dispute that the Settlement Agreement and Release are governed by Florida law and enforceable by a court in Florida. (Cuadra Decl. Exh. B at Par. 13).

<u>RAC Response to Def. Und. SOF ¶ 14</u>: Admitted that Addendum 5 makes no reference to the Cuquejo Claim and Settlement Agreement and therefore cannot and does not supersede or novate the Settlement Agreement. Paragraph 11 Settlement Agreement (Cuadra Dec. Exh. B) expressly provides that: "[t]his Agreement may not be amended except by written agreement signed by all the parties." Further Def. Und. SOF ¶ 14 is immaterial as the Addendum simply

---

[1] Clarendon's Undisputed Statement of Fact paragraphs shall be referenced as "Def. Und. SOF"

5

represents consent by the parties to adjust certain commission terms under the Agency Agreement. RAC does not assert in this case that the Agency Agreement itself (Cuadra Decl. Exh. A) was terminated by the Settlement Agreement, but rather that under the Settlement Agreement and Release, Clarendon cannot seek to collect excess commissions attributable to the Cuquejo Claim.

<u>RAC Response to Def. Und. SOF ¶ 15:</u>  Undisputed; however this fact is immaterial to entitlement to Summary Judgment and does not create an issue of fact that would preclude summary judgment in favor of RAC.

<u>RAC Response to Def. Und. SOF ¶ 16:</u>  RAC does not dispute the first clause of this paragraph, but vigorously disputes that Clarendon could not have known of the potential for an impact of the Cuquejo Claim on the excess commission calculation. Part of the excess commission Clarendon seeks to collect from RAC is attributable to the amounts RAC paid in defense of the Cuquejo Claim. Clarendon was on notice of the Agency Agreement and knew that its payment of the Cuquejo Claim could impact the sliding scale commission adjustment at the time it entered into the Settlement Agreement. It is undisputed that Clarendon failed to preserve in the Settlement Agreement its right to seek excess commissions. The fact that the adjusted excess commission would not be calculated until a future annual date set forth in the Agency Agreement is immaterial to the preclusive effect of the release.

<u>RAC Response to Def. Und. SOF ¶ 17:</u>  Undisputed; the language in these paragraphs do not create a disputed issue of fact, and in fact, support summary judgment as, on their face, they do *not* limit the Settlement Agreement's release of RAC solely to claims pertaining to alleged E&O liability to Clarendon. In fact, these paragraphs further reference payments made to resolve the Cuquejo Claim and the Olortegui bad faith claim, and do not limit the First WHEREAS clause of the Settlement Agreement. Clarendon admits that it paid the $1.3 million out of its own pocket (Stinson Decl. ¶ 8) and that it, in turn, used that exact $1.3 million as a

Clarendon loss figure that it calculated in the excess commission, which it sought to recoup, in part, from RAC.  (Sheehan Decl. ¶ 17) ("In calculating RAC's Adjusted Commission as of April 30, 2009, Clarendon, as a matter of course, included the $1.3 million of net loss that was incurred for the Cuquejo Claim.")

RAC Response to Def. Und. SOF ¶ 18:  While the Settlement Agreement does not expressly reference the Agency Agreement, it does expressly release claims that could arise under the Agency Agreement in Paragraph 2.  Paragraph 2 expressly provides:

> any and all claims, demands, obligations, liabilities or other cases of action of any kind whatsoever, whether in law or in equity, statutory or otherwise, whether or not presently known or contemplated, which have been, could have been, or might have been asserted as a result of the events related to or concerning the automobile accident that occurred on November 14, 2004, including but not limited to, any and all claims related to allegations of improper claims handling, professional liability, or bad faith on the part of RAC Insurance Partners, LLC.

(Settlement Agreement Par. 2, Cuadra Decl. Exh. B).

RAC Response to Def. Und. SOF ¶ 19:  RAC does not dispute that the quoted language appears to be contained in the January 11, 2008 email.  This fact is immaterial to entitlement to Summary Judgment and does not create an issue of fact that would preclude summary judgment in favor of RAC.  This communication took place prior to the Settlement Agreement and was superseded by it.  Paragraph 11 of the Settlement Agreement (Cuadra Decl. Exh. B) expressly provides that: "[t]his document contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions, agreements and understandings, both oral and written, among the parties with respect thereto."  Moreover, as set forth in the second quoted sentence of the email set forth in Def. Und. SOF ¶ 19, this email *supports* RAC's position that the Settlement Agreement and Release was executed as a "full release of all claims against RAC arising out of and/or related to the underlying Cuquejo v Olortegui matter."  Contrary to Clarendon's assertion, this language reflects an intention to release *all* claims related

7

to the Cuquejo Claim, and does not reflect an intention to only limit the resolution of E&O claims between RAC and Clarendon.

<u>RAC Response to Def. Und. SOF ¶ 20</u>:  RAC does not dispute that the quoted language appears to be contained in the January 11, 2008 email, which also set forth Mr. Newman's confirmation that "[i]n exchange for Lexington's agreement to pay its policy limits of $2-Million, Clarendon, . . . will execute *a full release of all claims against RAC arising out of and/or related to the underlying Cuquejo v. Olortegui matter*." (emphasis supplied). This does not create an issue of fact that would preclude summary judgment in favor of RAC. This communication took place prior to the Settlement Agreement and was superseded by it. Paragraph 11 of the Settlement Agreement (Cuadra Dec. Exh. B).  Moreover, as set forth in the email, Clarendon's counsel does not express an intent to limit the release to E&O claims but rather agrees that the "*release in favor of RAC should be limited to this specific Cuquello [sic] case*." (emphasis supplied).  This statement from Mr. Jack, counsel for Clarendon, is entirely consistent with Paragraph 2 of the Settlement Agreement (quoted above in response to Def. Und. SOF ¶ 18) and with Paragraph 1 and 3 of the Settlement Agreement wherein Clarendon, as a party, expressed its intention that the Settlement Agreement would extinguish RAC's liability:

> Lexington agrees to pay on behalf of RAC the sum of Two Million Dollars ($2,000,000) in settlement of any and all claims or causes of action asserted or which could have been asserted by Clarendon, Columbia or Illinois Union against RAC or Lexington regarding any claim for reimbursement of defense and/or indemnity related to the claims arising from the automobile accident of November 14, 2004.

(Settlement Agreement Par. 1, Cuadra Decl. Exh. B)

> Extinguish any potential liability on the part of RAC and Lexington for contribution, indemnity, subrogation, equitable subrogation, and/or proration, including but not limited to, both defense and indemnity, which might be claimed against RAC and/or Lexington by Clarendon, Columbia or Illinois Union and/or by any other person or entity for the matters released hereinabove.

(Settlement Agreement Par. 3, Cuadra Decl. Exh. B)

RAC Response to Def. Und. SOF ¶ 21: This fact is disputed, but immaterial. RAC tendered its insurance policy with Lexington. As Clarendon's own statement of undisputed facts set forth, Lexington paid the policy limits of $2 million toward the settlement of the Cuquejo Claim. (Def. Und. SOF ¶ 19; Clarendon's Opposition to RAC SOF ¶ 8; Cuadra Decl. Exh. B, Settlement Agreement Paragraph 1 (quoted above in response to Def. Und. SOF ¶ 20)).

**RAC'S RESPONSE TO CLARENDON'S DISPUTED MATERIAL FACTS[2]**

RAC Response to Def. Disputed SOF ¶ ¶ 1 & 2: This alleged dispute is a legal, not a factual determination, as it is undisputed that Clarendon agreed to be bound by the unambiguous terms of the Settlement Agreement. Cuadra Decl. Exh. B, Settlement Agreement. The emails cited by Clarendon support the parties' intention to be bound by the express terms of the Settlement Agreement, and even if they did not, they are superseded by Paragraph 11 of the Settlement Agreement.

RAC Response to Def. Disputed SOF ¶ ¶ 3, 4 , 5 & 6: It is undisputed, and Clarendon acknowledged in Paragraph 1 of the Settlement Agreement, that Lexington agreed to pay $2 million under RAC's policy with Lexington, which RAC tendered, toward the settlement of the Cuquejo Claim in settlement of any and all claims or causes of action asserted or which could have been asserted by Clarendon against RAC regarding any claim for reimbursement of defense and/or indemnity related to the claims arising from the automobile accident of November 14, 2004. (*See* Response to Def. Und. SOF 16 above).

RAC Response to Def. Disputed SOF ¶ ¶ 7 & 9: It is undisputed that in this action RAC is not asserting that the Settlement Agreement extinguished all of its obligations under the Agency Agreement. The fact that RAC may have entered into any addenda to the Agency Agreement is immaterial, particularly since the addenda make no reference to modifying the

---

[2] Clarendon's Disputed Statement of Fact paragraphs shall be referenced as "Def. Disputed SOF"

Settlement Agreement, but rather simply replace the sections dealing with the provisional commission rate and the General Agent commission table set forth in Agency Agreement Exhibit C.  Clarendon's statement regarding the "admission" of RAC by entering into the cited addendum is demonstrably false as the cited addendum makes no such reference.  Moreover, RAC never "admitted" that the inclusion of the Cuquejo losses were proper; in fact, the record evidence establishes that RAC objected to their inclusion.  (Alvarez Decl. ¶17 & Exh. D).

RAC Response to Def. Disputed SOF ¶ 8:   This alleged disputed fact is immaterial.  Clarendon does not dispute that at least a portion of the excess commission it seeks is attributable to the Cuquejo Claim.  How that amount is calculated is not a matter before this Court.

RAC Response to Def. Disputed SOF ¶ ¶ 10 & 11:  Purported "industry standards," "industry practice," "audit principles" and "practical necessity" are immaterial to the summary judgment question before the Court, which solely concerns Clarendon's express release of RAC from obligations attributable to the Cuquejo Claim.  Had Clarendon wanted to preserve the alleged "follow the fortune" industry practice, it could have carved out in the Settlement Agreement a reservation of its right to pursue the excess commissions attributable to the Cuquejo Claim.  There is no dispute that it failed to do so.

RAC Response to Def. Disputed SOF ¶ 12:   The respective titles and roles of Cuadra and Alvarez for purposes of the Agency Agreement are immaterial.  Clarendon does not present any disputed issue of fact as to the authority and experience of Cuadra and Alvarez with respect to RAC, or the personal knowledge underpinning their affidavits.  Moreover, other than their guarantees signed in their individual capacities, all agreements executed by Cuadra and Alvarez including the Settlement Agreement were signed on behalf of RAC.  The Settlement Agreement, expressly reflects that it was Cuadra executed as "managing partner."  (Cuadra Decl. ¶¶ 4, 12 & Exh. B at p. 5).

Dated: April 19, 2011                    Respectfully submitted,


                                          /s/ Ann M. St. Peter-Griffith
                                         MARCOS DANIEL JIMÉNEZ (FBN 441503)
                                         mjimenez@kasowitz.com
                                         ANN M. ST. PETER-GRIFFITH (FBN 0033154)
                                         astpetergriffith@kasowitz.com
                                         KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
                                         1441 Brickell Avenue, Suite 1420
                                         Miami, Florida 33131
                                         Telephone: (305) 377-1666
                                         Facsimile: (305) 377-1664

                                         *Attorneys for Plaintiff RAC Insurance Partners, LLC*

**CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF on April 19, 2011 on all counsel or parties of record on the Service List below.

                                                                     __/s/ Ann. M. St. Peter-Griffith____
                                                                       ANN M. ST. PETER-GRIFFITH

**SERVICE LIST**

BLAKE S. SANDO, ESQ.
Blake.Sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 S. Dadeland Boulevard, Suite 1400
Miami, FL 33156
Tel:  (305) 350-5300
Fax: (305) 373-2294


ADAM H. RUSS, ESQ.
adam@wassruss.com
WASSER & RUSS, LLP
80 Maiden Lane, Suite 1502
New York, NY 10038
Tel:  (212) 430-6040
Fax: (212) 430-6041


*Attorneys for Defendant Clarendon National Insurance Company*