UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:10-cv-24143-Moreno/Torres

| | |
|---|---|
| RAC Insurance Partners, LLC, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Clarendon National Insurance Company, | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

**PLAINTIFF'S MOTION *IN LIMINE*
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff RAC Insurance Partners, LLC ("RAC"), by and through its undersigned counsel, hereby moves for the entry of an order *in limine* precluding Defendant Clarendon National Insurance Company ("Clarendon") from introducing evidence at trial outside of the four corners of the settlement agreement ("Settlement Agreement") that is the subject matter of this case.

RAC is filing this motion in view of the July 25, 2011 motion *in limine* deadline established by this Court's April 20, 2011 Order Continuing Trial and Certain Pretrial Dates [D.E. 40]. This motion is made without prejudice to the position set forth in RAC's Motion for Summary Judgment [D.E.20], Reply [D.E. 36] and related filings [D.E. 21, 22]. Therein, RAC establishes that there is no genuine disputed issue of fact in this case and that RAC is entitled to the entry of summary judgment in its favor.

**INTRODUCTION**

This case concerns the construction and scope of certain release provisions of a Settlement Agreement. RAC is seeking a determination of its rights under the Settlement Agreement. This case primarily concerns the legal determination by this Court as to the parties'

rights and obligations under the Settlement Agreement, and to enforce Clarendon's releases thereunder.

<b>FACTUAL BACKGROUND</b>

   a. <u>**The Parties**</u>

RAC is a Florida limited liability company based in Miami, and is licensed to do business as an Insurance General Managing Agent. (SOF ¶ 1).[1] Defendant Clarendon National Insurance Company ("Clarendon") is an insurance company with its principal place of business in New York. As of April 1, 2003 through 2006, RAC served as Managing General Agent for Clarendon in Florida and the parties entered into a General Agency Agreement ("Agency Agreement").[2] (SOF ¶ 3 & 5).

   b. <u>**The Cuquejo Claim**</u>

Marlene Cuquejo ("Cuquejo"), the plenary guardian for Alfredo Cuquejo, filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Ciro Olortegui ("Olortegui"). (SOF ¶ 6 & 7). Olortegui claimed to be insured under a Clarendon policy written by RAC as Managing General Agent. (SOF ¶ 6). Cuquejo's state court action stemmed from an accident that occurred on November 14, 2004 involving Alfredo Cuquejo and Olortegui, which catastrophically injured Alfredo Cuquejo ("Cuquejo Claim"). (SOF ¶ 7). Clarendon paid a settlement on the Cuquejo Claim to Cuquejo as the plenary guardian for Alfredo Cuquejo. (SOF ¶ 8).

---

[1] ("SOF ¶__") refers to the designated paragraph of Plaintiff's Rule 7.5 Statement of Undisputed Material Facts [D.E. 21].

[2] A copy of the Agency Agreement is attached as Exhibit "A" to the Cuadra Declaration [D.E. 22-1] and is also filed on this Court's docket at [D.E. 1-4].

### c. The Clarendon-RAC Settlement Agreement

In February 2008, RAC and Clarendon entered into the Settlement Agreement, which is governed by Florida law and required to be enforced by a Court in Florida, that resolved, among other things, claims between them attributable to the Cuquejo Claim. (SOF ¶ 9). The Settlement Agreement also resolved allegations that RAC had improperly handled the Cuquejo Claim. (SOF ¶ 9). Clarendon entered into and executed the Settlement Agreement on February 26, 2008, and agreed to be bound by its terms, including without limitation, the releases and provisions of the Settlement Agreement. (SOF ¶¶ 10-18).

The Settlement Agreement on its face was unambiguous. Notably, in addition to other provisions, the Settlement Agreement provides in Paragraph 2, in pertinent part, as follows:

> Clarendon, Columbia and Illinois Union hereby *fully release, acquit, and forever discharge RAC* and Lexington and their predecessors and successors and *their respective shareholders,* executors, administrators, representatives, agents, officers, directors, servants, and employees *from and for any and all claims, demands, obligations, liabilities, or causes of action of any kind whatsoever,* whether in law or in equity, statutory or otherwise, *whether or not presently known or contemplated, which have been, could have been, or might have been asserted as a result of the events related to or concerning the automobile accident that occurred on November 14, 2004, including, but not limited to, any and all claims specifically related to allegations of improper claim handling, professional liability or bad faith on the part of RAC Insurance Partners, LLC.*

(SOF ¶ 13) (emphasis supplied).

The Settlement Agreement also provides in Paragraph 3 the parties' intent that RAC be discharged from any and all liability to Clarendon:

> It is the *intention of the parties to this Agreement to extinguish any potential liability on the part of RAC* and Lexington *for contribution, indemnity, subrogation, equitable subrogation, and/or proration, including, but not limited to, both defense and indemnity, which might be claimed against RAC* and/or Lexington *by Clarendon*, Columbia or Illinois Union and /or by any other person or entity for the matters released hereinabove.

3

(SOF ¶ 14) (emphasis supplied).

Further, in Paragraph 11 of the Settlement Agreement, the parties made clear their intention that the Settlement Agreement was the final iteration of the parties' intent by including the following integration clause:

> This document contains the *entire agreement between the parties with respect to the subject matter hereof and supersedes all prior discussions, agreements and understandings, both oral and written, among the parties with respect thereto.*

(SOF ¶ 16). (emphasis supplied).  The Settlement Agreement is governed by Florida law and RAC or Clarendon can only bring action regarding the Settlement Agreement in Florida.  (SOF ¶ 10).  Counsel for RAC and Clarendon reviewed the Settlement Agreement before both parties executed it.  (SOF ¶ 15 & 17).

### d. Commission Adjustment under the Agency Agreement and the New York Action

RAC received commissions from Clarendon pursuant to the Agency Agreement.  (SOF ¶ 19).  Under the terms of its Agency Agreement with Clarendon, RAC was to receive provisionally an initial commission, which was subject to adjustment at prescribed intervals ("adjusted commissions").  (SOF ¶ 20).  Well after the effective date of the Settlement Agreement, Clarendon sued RAC and two of its principals, Luis Alvarez ("Alvarez") and Enrique Cuadra ("Cuadra") in New York state court, seeking to recover an adjusted commission of $540,123.14 attributable to the losses sustained by Clarendon as a result of the Cuquejo claim.  The case was removed to federal court and is currently styled *Clarendon National Insurance Company v. RAC Insurance Partners, LLC, Luis Alvarez and Enrique Cuadra*, Case No. 1:10-cv-08993-RMB in the U.S. District Court in and for the Southern District of New York (the "New York Action").  (SOF ¶ 28).

As part of this case, RAC is *NOT* asking the Court to determine how the Cuquejo Claim impacted the adjusted commission calculation, or the exact amount of that impact. Rather, what is material and undisputed is that at least a portion of what Clarendon claims in damages in its New York Action is attributable to the Cuquejo Claim's impact on Clarendon's adjusted commission overpayment claim. (¶¶ 29-32). The Settlement Agreement was never modified or amended. (SOF ¶ 33). RAC never agreed to Clarendon reserving any right to seek adjusted commission overpayments attributable to the Cuquejo Claim from RAC upon or after the execution of the Settlement Agreement.[3] (SOF ¶ 34).

In opposing RAC's Summary Judgment Motion, Clarendon attempted to raise disputed issues of fact by interjecting affidavits from individuals purporting to be involved in the negotiations of the Settlement Agreement. *See* Affidavit of Michael Sheehan [D.E. 32]; Affidavit of Barry Stinson [D.E. 30]; Affidavit of Lewis N. Jack [D.E. 33]. These affidavits attempt to create the misimpression that Clarendon, by entering into the Settlement Agreement, intended to limit that agreement to a release of RAC for claims arising from errors and omissions ("E&O"). However, that professed negotiation intent contained in the affidavits is patently inconsistent with the plain language of the Settlement Agreement, which contains no such release limitation, and in fact, provides a general release for "employees *from and for any and all claims, demands, obligations, liabilities, or causes of action of any kind whatsoever,* whether in law or in equity, statutory or otherwise, *whether or not presently known or contemplated.*" (SOF ¶ 13) (emphasis supplied).

---

[3] Prior to filing the New York Action, Clarendon never brought action in this Court, or otherwise in Florida, seeking a declaration as to whether it could sue to recover adjusted commission overpayments attributable to the Cuquejo Claim. (SOF ¶ 35). Instead, Clarendon improperly sued outside of Florida on a claim released, at least in part, by the Settlement Agreement. (SOF ¶¶ 23-34).

## **ARGUMENT**

Florida contract law governs this Court's construction and enforcement of the Settlement Agreement.  *Carpaneda v. Quayside Place Partners, LLP*, CASE NO. 09-20740-CIV-SEITZ/O'SULLIVAN, 2010 U.S. Dist. LEXIS 67861, *2 (S.D. Fla. April 12, 2010) ("Because a settlement agreement is a contract, 'its construction and enforcement are governed by principles of Florida's general contract law.'") (citations omitted).  Any rights and duties the parties had at the moment they entered into the Settlement Agreement were merged into the settlement agreement, unless otherwise stated.  *Peralta v. Peralta Food Corp.*, 506 F. Supp. 2d 1274, 1279 (S.D. Fla. 2007).  Thus, discussion about the parties' negotiations or what was intended by the parties during the negotiations in wholly immaterial, particularly in view of the parties' inclusion of the unambiguous integration clause.

The longstanding rule in Florida is that if an agreement is not ambiguous, the actual language used in the contract is the best evidence of the intent of the parties.  *In re*: *Sunshine-Jr. Stores, Inc.*, 198 B.R. 823, 828 (M.D. Fla. 1996) (citations omitted).  "[W]hen the terms of the writing are plain and unambiguous, courts should not look beyond the written language of the document to determine the intent of the parties."  *See In re*: *Petition of the MS "Medeleine" Schiffahrtsgesellschaft mbH & Co., KG*, Case Number: 08-61757-Civ-Moreno, 2010 U.S. Dist. LEXIS 14950, *9 (S.D. Fla., Feb. 19, 2010).  The language of an agreement "will be deemed conclusively indicative of [the parties'] intentions where it is reasonably susceptible to only one interpretation."  *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1357 (S.D. Fla. 2007) (citations omitted).  The interpretation of a release is also guided by the general principles

governing contract construction. *See Steffen v. Gray, Harris & Robinson*, 283 F. Supp. 2d 1272, 1284 (M.D. Fla. 2003); *Hold v. Manzini*, 736 So. 2d 138, 141 (Fla. 3d DCA 1999).[4]

Even if *arguendo* this case proceeds past summary judgment, it is this Court as the trier of fact that will decide the construction of the unambiguous Settlement Agreement. "The construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible." *Nova Cas. Co. v. Waserstein*, 2005 U.S. Dist. LEXIS 45882, *4 (S.D. Fla. Sept. 1, 2005) (Jordan, J.) (granting motion in limine to exclude expert testimony) (quoting *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (6th Cir. 2001)). Further, a disputed issue of fact does not mean that purported testimony about the parties' intent not contained within the four corners of the Settlement Agreement is admissible for trial purposes. *See Goldberg v. Hilton*, 2009 U.S. Dist. LEXIS 41846, *10 (S.D. Fla. May 18, 2009) (Moreno, J.) (excluding *in limine* testimony from experts where contract was unambiguous).

Clarendon does not dispute its assent to the Settlement Agreement. (SOF ¶ 18). Clarendon's assertion that the Settlement Agreement only releases claims attributable to RAC's E&O, as well as the affidavits of Sheehan, Stinson and Jack (and presumably related testimony Clarendon may seek to introduce at trial) conflict with the plain language of the Settlement Agreement. Clarendon's intent at the time of the negotiations, as well as the parties' negotiation discussions, is immaterial in view of the Settlement Agreement's integration clause. Any

---

[4] Contract language is ambiguous only where it is reasonably susceptible to more than one interpretation. *F.W.F., Inc.*, 494 F. Supp. 2d at 1357. To the extent possible, this Court should give effect to every, word, term or phrase in the Settlement Agreement. *See In re*: *Petition of the MS "Medeleine,"* 2010 U.S. Dist. LEXIS 14950, at *9; *F.W.F., Inc.*, 494 F. Supp. 2d at 1358. Each of the pertinent Settlement Agreement provisions must be read in light of the others so as to give the meaning reflected in the contract as a whole. *Id.*

7

attempt to introduce contrary evidence would be immaterial and a drain on parties' and Court's time and resources.  Clarendon should be foreclosed from seeking to introduce any evidence concerning the parties' intent that is contrary to or outside of the language contained in the actual Settlement Agreement.

Both in the state of Florida and in the Eleventh Circuit, the enforcement of settlement agreements *and the plain language of their provisions* are highly desirable.  *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (encouraging settlements in order to conserve judicial resources); *Carpaneda*, 2010 U.S. Dist. LEXIS 67862, at *6 (settlements are highly favored and will be enforced whenever possible); *see Robbie*, 469 So. 2d at 1385 ("settlements are highly favored and will be enforced whenever possible.").  In this instance, it is not only desirable, but vital, that this Court enforce the Settlement Agreement as it is written and not allow Clarendon to burden this Court with trial evidence concerning the parties' intent that is not contained in the Settlement Agreement itself.

WHEREFORE, based upon the foregoing, Plaintiff RAC Insurance Partners, LLC respectfully requests that if this case proceeds past summary judgment, this Court order *in limine* that the Defendant is foreclosed from introducing into evidence information and testimony concerning the parties' intentions at the time of the negotiation of the Settlement Agreement, or evidence concerning the parties' intent that is not contained within the four corners of the Settlement Agreement.

Dated: July 25, 2011							Respectfully submitted,


								/s/ Ann M. St. Peter-Griffith
								MARCOS DANIEL JIMÉNEZ (FBN 441503)
								mjimenez@kasowitz.com
								ANN M. ST. PETER-GRIFFITH (FBN 0033154)
								astpetergriffith@kasowitz.com
								KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
								1441 Brickell Avenue, Suite 1420
								Miami, Florida 33131
								Telephone: (305) 377-1666
								Facsimile: (305) 377-1664

								*Attorneys for Plaintiff RAC Insurance Partners, LLC*

## **CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served via CM/ECF on this 25th day of July, 2011 on all counsel or parties of record on the Service List below.

/s/ Ann. M. St. Peter-Griffith
ANN M. ST. PETER-GRIFFITH

## **SERVICE LIST**

Blake S. Sando, Esq.
Blake.Sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 S. Dadeland Boulevard, Suite 1400
Miami, FL 33156
Telephone:   (305) 350-5300
Facsimile:   (305) 373-2294

Adam H. Russ, Esq.
adam@wassruss.com
WASSER & RUSS, LLP
80 Maiden Lane, Suite 1502
New York, NY 10038
Telephone:   (212) 430-6040
Facsimile:   (212) 430-6041

*Attorneys for Defendant Clarendon National Insurance Company*